Evans, J.
delivered the opinion of the Court.
The Plaintiff Mrs. Kottman, was once the undisputed owner of the land, and is entitled to recover, unless the defendant has acquired a good title under the conveyance from Higgen-bottom & Wife, to Mary Carr. This makes it necessary that we should decide on all the objections made by the plaintiff to *570 the defendant’s title. It is sufficient, however,in relation to all of these, (except those which were decided in the Plaintiff’s favor on the circuit, and which are embraced in the defendant’s grounds of appeal) to say, that this Court concur with the Circuit Judge. As to the alienage of the husband, the general rule is that an alien may purchase, but he cannot hold real estate; yet his title is good until office found, and no one but the Lord of the escheat can oust him of his possession. He certainly had some estate in the land, and being the husband of the owner, he comes within the description of the person, with whom the wife may join in conveying away her real estate. Nor do we think there is any thing in the objections that this estate was not the inheritance of the wife, and therefore not embraced in the Act of 1795. The word inheritance does not necessarily mean an estate which has descended, but may as well mean any estate which may descend or be inherited; and in this sense it seems to me, the word is used in the Act of 1795, and includes every estate of the wife, which, on her death, by operation of law, would be cast on her heir at law. This disposes of all the points of the case, except the two which were decided on the circuit in favor of the plaintiffs, and are made the grounds of appeal by the defendant,.—which I proceed to consider.
When the case was presented on the circuit, it appeared to me that the act contemplated that the wife should not only bear testimony before the Judge or Justice, that the deed was voluntary, and executed seven days before her examination, but she was required also to say, that the transaction was bona fide, and not pretensive; that it was a real sale, and not a mere color to transfer her inheritance. Í have known more than one case, where the forms of the land have been obscured merely to invest the husband with the lee of his wife’s laud by a reconveyance from the pretended purchaser. But a more attentive examination has satisfied me that this is not the true meaning of the Legislature. The great object of the act, both in relation to dower and inheritance, was to protect the wife against any influence which might be exercised over her, and to leave her to the guidance of her own free will in the matter. *571 The act, therefore, provides that seven days shall intervene between the execution oí the deed and her examination before the Judge or Justice. She shall “declare to him that she did at least seven days before such examination actually join her husband in executing such release,” &c. After this declaration has been made, the act provides that a “certificate, signed by the woman, and under the hand and seal of the Judge or Justice as aforesaid, shall then be immediately endorsed upon the said release, or a separate instrument of writing to the same effect, in the form and to the purport of the certificate prescribed in the second clause of this act; to which certificate an addition to the following effect shall invariably be made, to-wit: that the woman did declare that the release was positively and bona fide executed, at least seven days before such her examination.”
From the reading of this clause, it appears that two things are required to the perfection of the renunciation; first, the private examination by the Justice; and secondly, an endorsement of the result of the examination on the release or a separate piece of paper. The certificate is the written evidence of the facts as to which the woman has made a declaration, and, it would seem, need not contain any thing more than that the act of joining her husband was free and voluntary, and that seven days had elapsed since the execution. These seven days, I presume, are allowed, that she may have time to reflect on what she has done, to consult her friends, and if she repent, to withhold her assent to the filial consummation of the deed. When, therefore, the act directs that the Justice shall endorse a certificate in the form and to the effect of that, prescribed in the second clause, for the renunciation of dower, with the addition that it was positively and bona, fide executed at least seven days before such her examination, these latter words were necessary to be inserted, or some equivalent words, in order to make the certificate correspond with the facts, about which the Judge or Justice is required to examine the woman. It will be perceived, that the 3 edge or Justice is not required to examine her, as to the bona fieles of the release, and there is nothing in the act, which authorizes any conclusion, that the certificate *572 should contain more than a clear statement of what she did declare on those points, on which the act requires her to be examined. I conclude, therefore, that the words positively and bona fide can'nave no ot her application, than as to the fact that the deed was executed at least seven days before her examination. Taken in this connexion, I think the case is free from difficulty. The act docs not require that the words positively and bona fide should be used, but that the certificate should be to the effect that the woman did declare, &c. The words used in this renunciation are that she did actually join her husband, &c. Is this word, actually, of the same or of equivalent meaning with the words,positively and, bona fide. These latter words are of such familiar use, that they are to be found in several of our English Dictionaries, and are defined to mean, really, Indy; actually, is defined by the words, in fact, in reality,—and, positively, by the words, certainly, without doubt. In Lcvoref’s Latin and English Dictionary, actually, is explained by the words, rere, re-ipsa, revera, and these arc translated into English by the words, true, real, certain, not false, or counterfeit, in truth, in reality, in fact, indeed. Positively, is defined by the Latin words, eerie,prefecto,—which are translated into English, by the words, certainly, assuredly, truly, indeed, doubtless, really. From this comparison, I think it clear, that these words, although they may not be synonimes, when applied to different subjects, yet when applied to the same subject, they are so nearly of the same meaning, that we may fairly infer that they were used in the same sense by the Legislature in the Act of 1795. Thus in common parlance, we may say in reference to the time, when a thing was done, that it was, bona fide, done, at such a time, or actually, or positively, done, meaning thereby that it was, really, certainly, in truth, in reality, and, without doubt, done at the time mentioned. I am, therefore, of opinion, that the word, actually, used in the certificate in this case, is of the same import, and to the same effect as the words, positively, and, bona fide, used in the act: and in this construction the whole Court concur.
But the most difficult part of the case remains to be considered, and on that there is not the same unanimity of opinion. *573 This question relates to the sufficiency of the recording of the deed from Higginbottom and wife to Mary Carr. The deed is dated the 12th of February, 1835; the renunciation was on the 24th of the same month, but it was not recorded until 12th of October, 183G, more than one year and seven months after-wards, but within the life time of both husband and wife. I should not consider this a question of much difficulty, if we were not embarrassed by the case of Hillegas v. Hartley, 1 Hill C. R., 106. There would be no difficulty in distinguishing that case from this, so far as the facts are concerned; but the principle of that case, as would seem from the reasons given, would cover this as well as all other cases, where the renunciation was not recorded within six months from its date. This construction of the Act, a majority of t his Court are of opinion was error; and I will now proceed to assign the reasons for that opinion.
The words of the Act of 1795, are, “and such renunciation shall not be considered as being complete or legal, until the same shall be recorded in the office of mesne conveyances, or office of the clerk of the County Court.” There arc two constructions which have been put on these words. The venerable Chancellor DcSaussure, who decided the case, Hillegas v. Hartley, on the circuit, held, that as between the parties and those claiming under them, the deed might be recorded at any time. In the Court of Appeals (two Judges only being present) this decree was reversed; and if the reasoning of the Judge who pronounced the opinion was adopted by the other Judge, it was decided by the Court, chat without reference to the death of the wife, the renunciation was void, because it was not recorded within six months from its date. The principle on which this case proceeds, is, that recording, like delivery, and the other essentials of a deed, is necessary to its perfection, and without it, the deed is void as between the parties, as well as against all other persons. It is as much a nullity as if it had never been delivered. The general rule in relation to the registration of deeds, is, that they are good without recording, between the parties, and against all other persons having notice of them. Is there any thing in the words of the Act of 1795, which requires *574 a different construction? All other deeds arc perfected when signed, sealed and delivered. When the grantor has done all, that by law he is required to do, it, would seem to me, the deed» as to him, is perfected. Recording is not an appropriate part of execution. It is to be done by the grantee, and not by the grantor. Such a construction is at variance with that, which is given to all other Acts of the Legislature on the subject of recording. By the 45th section of the Act of 1785, (P. L., 381) it is enacted, “that no conveyance of lands, tenements, or hereditaments within this State, shall pass, alter or change from one person to another, any estate of inheritance, fee simple, or any estate for life or lives; nor shall any greater or higher estate be made or take effect in any person or persons, or any use thereof be made by bargain and sale, lease and release, or other instrument, unless the same be made in writing, signed, sealed, and recorded in the clerk’s office of the county,” &c. The Act goes on to provide, that without recording, “such deed or other conveyance shall be legal and valid between the parties themselves and their heirs, but shall be void and incapable of barring the rights of persons, claiming as creditors or subsequent purchasers. Here the words of the Act would seem to imply, that (except as between the parties themselves and their heirs) no estate shall pass from one person to another, unless the conveyance was signed, sealed and recorded. Here recording is put in juxta position with signing and sealing, and might be supposed to have been intended as equally essentia] to the validity of the deed, and without which, it would be incapable of barring the rights of creditors or subsequent purchasers; and yet it has been held, in Tart v. Crawford, and numerous other cases, that without recording, the deed was good, and did alter and pass the estate, as to subsequent purchasers having explicit notice. This was on the clear principle, that the object of recording is notice, and as to one having notice, the end of recording is attained. By the Act of 1823, (6 Stat, 213,) it is declared, that no marriage settlement shall be valid, until recorded in the office of the Secretary of State, and in the office of the Register of mesnes conveyances, where the parties reside, provided, that the par *575 ties shall have throe months to record the same, and if not recorded within three months, shall be null and void. The words, “shall not be valid until recorded,” is as strong an evidence of legislative will, that without recording, a marriage settlement is null and void as to all persons, as the words used in the Act of 1795—“the renunciation shall not he considered, as complete and- legal until the same shall he recorded.” “Shall not be valid,” and “shall not be complete and legal,” seem to be of the same import, and to convey the same idea. If there be a difference, I should say the former words, connected with the subsequent words of the Act, mill and void, show more strongly a legislative intention, that without recording, a marriage settlement should be utterly null and void as to all persons.
On the construction of the Act of 1823, it would seem, from what is said in Fowke v. Woodward, (1 Spear E. R., 233,) that in the Court of Equity, where cases of that description usually arise, the opinion prevailed for some time, that the words of the Act would require the same construction, as had been given to the Act of 1795, in Hillegas v. Hartley; that is, that the recording within the prescribed time was essential to the perfection of the deed. But when the question arose directly, in the case of Fawke v. Woodward, the Appeal Court of Equity, by the unanimous opinion of the Chancellors, decided, that an unrecordcdjmarriage settlement operated, as to third persons, from the time of recording, and if not recorded within time was void; but as to the parties themselves, it operated ah ini-tio, because they had notice from the beginning. Thus, construing the Act of 1823, as a registry Act, and carrying out the principle upon which Tart v. Crawford, and Givens v. Branford, had been decided, it is of great importance, that all Acts, on the same subject, should receive a similar construction; and I do not sco how this can be, without giving to the Act of 1795 the same effect, as is given to all the other Acts, which require registration of deeds.
It was said in the argument, that if nothing had been said about recording, in the Act of 1795, still the deed and renunciation would have to. be recorded, under the general provision of the Act of 1785, and that, therefore, something more than mere *576 notice was intended. The second clause of the same Act requires, that renunciations of dower should be recorded also, and I have never heard it even supposed that such a renunciation would be void as to the wife without recording. The case of Gough a. Walker, arose on the construction of a different Act, and under a very different rule, from that which has prevailed since 1795. The decision in the case of Gough v. Walker, 1 N. & M’C., 469, was on the Act of 1731, which was said to be analogous to the levying of a fine. That was a judicial proceeding, and although the note of the fine and the foot of the fine might be made at any time, within a year and a day, and afterwards on notice, yet these are said, in Hillegas v. Hartley, to be like a final judgment, without which the record would be incomplete; and if the recording in the Court of Common Pleas be a substitute for the note and foot of the fine, the renunciation of dower under the Act of 1731 was incomplete without recording; and in this view the case of Gough v. Walker, was correctly decided. In that case, the release of dower was not recorded for fifty years, and not until the action was brought; and so far as appears from the reported case, the recording was in the Register’s office, and not in the Common Pleas. The proceeding, under the Act of 1795, bears no resemblance to a judicial proceeding. The renunciation may be before a Judge, but it may as well be before a Justice. No acknowledgement in Court, or record of it in the Court, is required, or any thing which bears the least affinity to a judicial proceeding. I agree fully with what is said in Hillegas v. Hartley, that the renunciation of the wife under the Act of 1795 is a mode of conveyance, and so regarded, I do not perceive the slightest reason for supposing it was intended, the recording should bo for any other purpose, than that fer which other deeds are required to be recorded.
The Act of 1795, in requiring the renunciations to be rcorded, meant to put them on the same footing in every particular as other deeds, or it meant that the deed should be inchoate until recorded. It either intended to subject them to all the provisions of the Act of 1785, or to make recording like delivery essential to the completion of the deed. If we adopt this *577 latter construction, then it would seem to me that the recording may be at any timé within the lifetime of the wife. Thus a deed may be signed and scaled at one time, it may be delivered at another, and it may be recorded at another; but the recording, like the delivery, may be at any time whilst the wife is living. This construction would decide this case for the defendant, in consistency with the case of Hillegas v. Hartley, but not in consistency with the reasons upon which that case is put: but a majority of this Court think that would be too narrow a construction, and would not effect what we think of great importance,—to restore to our registry laws a uniformity of construction, which will make them consistent with each other. The effect of this is a reversal of the case of Hillegas v. Hartley. I feel the full force of all that has been said on the rule of “stare decisis,” but the case of Hillegas v. Hartley has not settled any great rule of property under which rights have been acquired, which the reversal would defeat. Its only effect will be in a few instances to restore rights honestly, in most cases, acquired, but which would have been defeated by accident or by ignorance that the law required such deeds to be recorded within six months. It defeats no right; it only avoids a forfeiture.
The motion for anew trial is granted.
Johnston, Ch., Caldwell, Ch., Wardlaw, J., Frost, J., and Withers, J., concurred.